UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RONALD STEVEN MYERS and GEORGE MYERS, </br></br>Plaintiffs,</br></br>v.</br></br>THE PEOPLES BANK OF EWING,</br></br>Defendant. | )</br>)</br>)</br>)</br>)</br>) No.: 3:11-CV-380</br>) (VARLAN/GUYTON)</br>)</br>)</br>) |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on defendant's Motion to Dismiss [Doc. 18]. Defendant moves to dismiss Counts I, II, V, VI, and VII of the complaint for failure to state a claim upon which relief may be granted.[1] Plaintiffs filed a response in opposition [Doc. 25],[2] and defendant replied [Doc. 27]. For the reasons explained herein, the motion will be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Defendant's motion also seeks dismissal of Count III, plaintiffs' claim under the Truth in Lending Act ("TILA"). Subsequent to the briefing on this motion, plaintiffs submitted a notice of voluntary nonsuit as to the TILA claim [Doc. 41], and by order of the Court [Doc. 44], that claim has been dismissed with prejudice.

[2] Plaintiffs' response was due on or before February 17, 2012 [Doc. 21]. Plaintiffs filed a response the following day, however, because counsel "was traveling in West Virginia where there is no cell phone or internet connection readily available" [Doc. 24]. Plaintiffs move the Court for leave to file their response after the time has expired for doing so [*Id.*]. For good cause, and because it appears that defendant does not oppose this request, the Court will grant plaintiffs' request to late file their response to the motion to dismiss.

## I. Background[3]

Plaintiffs were cattle brokers [Doc. 17 ¶ 9]. On or about 2004, Steve Myers purchased a livestock yard known as Ewing Livestock Yard, Inc. ("Ewing Livestock Yard") [*Id.* ¶ 8]. He paid cash for the livestock yard and used the services of Peoples Bank of Ewing ("Peoples Bank") for his banking needs with regard to the livestock yard [*Id.* ¶¶ 10, 12]. More particularly, plaintiffs maintained a joint account at Peoples Bank for business purposes [*Id.* ¶¶ 34, 39–42].

Sometime prior to April 2006, plaintiffs deposited approximately $940,000 worth of bad checks relating to their cattle-selling business written by Dale Hill and JC Cattle Company into their joint account that were subsequently dishonored for insufficient funds [*Id.* ¶¶ 35, 40]. Plaintiffs allege that these checks were held by Peoples Bank for approximately twenty to forty days, so they continued to ship cattle to Dale Hill and JC Cattle Company [*Id.* ¶¶ 35, 40–42]. They were given notice of the bad checks via mail in April 2006 [*Id.* ¶ 35].

Plaintiffs subsequently entered into a loan agreement with Peoples Bank to cover the dishonored checks (the "bad-check loan") [*Id.* ¶¶ 43, 45, 52, 54, 65, 73]. George Myers pledged certain real property, his Ausmus Farm, as security for the bad-check loan, which was worth approximately $1.5 million [*Id.* ¶¶ 45–48]. Plaintiffs renewed the bad-check loan

---

[3]For the purposes of a motion to dismiss, the Court takes plaintiff's factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all the factual allegations contained in the complaint" (citations omitted)).

2

on or about July 29, 2009 [*Id.* ¶¶ 52–56, 65–66, 70]. In so doing, they signed security agreements pledging additional collateral for the bad-check loan, including property owned by George Myers and Steve Myers worth $9,000,000: plaintiffs' Ralston farm, also known as Lawson Acres; George Myers's residence, 4471 Back Valley Road, Speedwell, Tennessee 37870; Livestock Market Land, known as Stockyard Drive, Highway 58, Ewing, Virginia 24248; George Myers's childhood residence, also known as Bluff Farm and/or Back Valley Road, Speedwell, Tennessee 37870; a second lien on the Stockyard also known as 3903 Fountain Valley Drive, Knoxville, Tennessee 37918; the property known as Cross Valley Road, Lafollette, Tennessee 37766; and the property known as Straight Branch Road, Speedwell, Tennessee 37870 [*Id.* ¶¶ 52–56, 58].

Plaintiffs paid on the loans until about July 2009 [*Id.* ¶ 73], at which time Peoples Bank accelerated the note and demanded full payment [*Id.* ¶ 75]. In 2009, Peoples Bank began sending foreclosure notices to plaintiffs regarding "nearly all the land they owned, confusing [plaintiffs] as to what was going on because they were under the impression that only the Ausmus Farm secured the bad check loan with the bank" [*Id.* ¶ 77]. George Myers filed for bankruptcy protection on or about September 1, 2009, and Steve Myers filed for bankruptcy protection on or about December 1, 2009 [*Id.* ¶ 78]. The bankruptcy trustees abandoned any claims against Peoples Bank [*Id.*].

Plaintiffs commenced this action on or about August 15, 2011 [Doc. 1], and were later granted leave to file an amended complaint [Doc. 16], which was filed on December 29, 2011 [Doc. 17]. Pursuant to the amended complaint, plaintiffs assert seven claims, which plaintiffs

3

refer to as "counts": (I) breach of contract; (II) violation of the Tennessee Consumer Protection Act ("TCPA"); (III) violation of the Truth in Lending Act ("TILA"); (IV) fraud in the inducement; (V) damage to personal and/or real property; (VI) fraudulent concealment; and (VII) economic duress [Doc. 17 ¶¶ 83–117]. Defendant filed a motion to dismiss Counts I, II, V, VI, and VII on the basis that plaintiffs fail to allege facts sufficient to state plausible claims for relief [Doc. 18]. Defendant also asserts plaintiffs' TCPA claim is time-barred [*Id.*].

## II. Analysis

### A. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all

4

reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

### B. Count I: Breach of Contract

Pursuant to Count I, plaintiffs assert "Peoples Bank breached its contract with Steve and George and consequently breach [sic] its implied duty of good faith and fair dealing when it tricked Steve and George into pledging all their land as collateral when it came time to renew their loan and failed to timely notify them of the bad checks" [Doc. 17 ¶ 85]. Count I further claims that "Plaintiffs have been damaged by Peoples Bank's breach of contract and consequently its breach of implied duty of good faith and fair dealing" [*Id.* ¶ 86].

Defendant moves the Court to dismiss Count I, asserting that the claim is based, in part, on the allegation that Peoples Bank "tricked" plaintiffs into signing a security agreement that pledged their land as collateral for the bad-check loan [Doc. 19]. Defendant contends that allegations of trickery in the signing of a contract do not state a claim for breach of contract. In response, plaintiffs contend that the allegations of trickery do not support their breach-of-contract claim: "Defendant is misguided in its argument that Plaintiffs' [sic] seek

5

a claim for breach of contract because the Defendant 'tricked' them into signing blanket security instruments" [Doc. 25 at p. 4]. "Plaintiffs' [sic] seek a claim against Defendant for Defendant's failure to perform the duties it owed Plaintiffs by not making Plaintiffs aware of bad checks received and deposited by Plaintiffs in a timely manner, thereby damaging them." *Id.* In reply, defendant asserts that, pursuant to plaintiffs' concession, Count I should be dismissed to the extent that it purports to state a claim for breach of contract based on the allegations of trickery [Doc. 27 at p. 2].

While defendant has correctly stated the law that an allegation of trickery in the signing of a contract does not state a claim for breach of contract, *Vance v. Schulder*, 547 S.W.2d 927, 931 (Tenn. 1977), defendant does not address plaintiffs' claim for breach of the implied duty of good faith and fair dealing. "In addition to the explicit terms, contracts may be accompanied by implied duties, which can result in a breach." *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). The Court cannot simultaneously dismiss a claim under one theory, while allowing the claim to proceed under an alternative theory. Accordingly, the motion to dismiss Count I is denied.

    **C.**    **Count II: Violation of the Tennessee Consumer Protection Act**

Pursuant to Count II, plaintiffs assert that Bob Bryant, a Peoples Bank representative, "tricked them into signing away as collateral all the land they owned for the bad check debt" [Doc. 17 ¶ 88]. The trickery allegedly occurred on July 29, 2009, at which time plaintiffs signed a security agreement when they thought they were renewing the bad-check loan [Doc. 17 ¶¶ 51–72, 88].

6

Defendant, citing the one-year statute of limitations in Tenn. Code. Ann. § 47-18-110, argues that the TCPA claim is time-barred because any TCPA claim would have expired on July 29, 2010, a year from the date of the alleged trickery, and plaintiffs filed this lawsuit on August 15, 2011 [Doc. 19 at pp. 5–6]. Defendant also notes that the lawsuit was filed more than a year after the bankruptcy trustees abandoned any claims against Peoples Bank [*Id.*]. Further, defendant argues that plaintiffs knew or should have known that their property was encumbered by Peoples Bank no later than December 31, 2009, as a result of receiving foreclosure notices from Peoples Bank for "nearly all the land they owned" [*Id.*]. Alternatively, defendant argues that the amended complaint fails to state a claim for a TCPA violation because the TCPA does not apply to a bank's conduct to foreclose on security [Doc. 19].

Plaintiffs' TCPA claim accrued "when they discovered or should reasonably have discovered their injuries and the cause thereof," *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 917 (Tenn. Ct. App. 2000), and they had one year from this time to assert the claim, Tenn. Code Ann. § 47-18-110 (providing that a claim made pursuant to the TCPA must be "brought within one (1) year from a person's discovery of the unlawful act or practice, but in no event shall [it] be brought more than five (5) years after the date of the consumer transaction giving rise to the claim for relief"). Taking the allegations in the amended complaint as true, plaintiffs reasonably should have known that their property was encumbered by Peoples Bank by at least December 31, 2009, because they received foreclosure notices "[i]n 2009." *See Vance*, 547 S.W.2d at 930 ("Mere ignorance and failure

7

of the plaintiff to discover the existence of a cause of action is not sufficient to toll the running of the statute of limitations." (citation omitted)).

Plaintiffs claim the statute of limitations was tolled, however, as a result of defendant's fraudulent concealment and George Myers's incapacity, citing, with respect to the latter, the motion to appoint a guardian ad litem for George Myers [Doc. 25].[4] Fraudulent concealment can toll the statute of limitations, but "[t]o come within this exception, the plaintiff must prove that the defendant took affirmative action to conceal [the plaintiff's] cause of action and that . . . the plaintiff[] could not have discovered his cause of action despite exercising reasonable diligence." *Id.* (citations omitted). Here, plaintiffs have pleaded no facts to show that, through exercising reasonable diligence upon receiving the foreclosure notices "[i]n 2009," they could not have timely discovered their TCPA claim. Indeed, their allegations suggest otherwise as plaintiffs alleged they filed for bankruptcy on September 1, 2009, and December 1, 2009 [Doc. 17 ¶ 78].

Mental incapacity can also toll the statue of limitations. *Sherrill v. Souder*, 325 S.W.3d 584, 599–600 (Tenn. 2010); Tenn. Code. Ann. § 28-1-106. The statute of limitations is tolled, however, only if the mental incapacity exists "at the time the cause of action accrued." Tenn. Code Ann. § 28-1-106. While plaintiffs allege that George Myers was in a car accident in 2005 that resulted in "severe head injuries" and that he lost his wife shortly thereafter [Doc. 17 ¶¶ 26–32], plaintiffs have not alleged that George Myers was

---

[4]Subsequent to the briefing on the motion to dismiss, the Petition to Appoint Guardian Ad Litem/Attorney Ad Litem for Plaintiff George Myers was denied [Doc. 43].

of the plaintiff to discover the existence of a cause of action is not sufficient to toll the running of the statute of limitations." (citation omitted)).

Plaintiffs claim the statute of limitations was tolled, however, as a result of defendant's fraudulent concealment and George Myers's incapacity, citing, with respect to the latter, the motion to appoint a guardian ad litem for George Myers [Doc. 25].[4] Fraudulent concealment can toll the statute of limitations, but "[t]o come within this exception, the plaintiff must prove that the defendant took affirmative action to conceal [the plaintiff's] cause of action and that . . . the plaintiff[] could not have discovered his cause of action despite exercising reasonable diligence." *Id.* (citations omitted). Here, plaintiffs have pleaded no facts to show that, through exercising reasonable diligence upon receiving the foreclosure notices "[i]n 2009," they could not have timely discovered their TCPA claim. Indeed, their allegations suggest otherwise as plaintiffs alleged they filed for bankruptcy on September 1, 2009, and December 1, 2009 [Doc. 17 ¶ 78].

Mental incapacity can also toll the statue of limitations. *Sherrill v. Souder*, 325 S.W.3d 584, 599–600 (Tenn. 2010); Tenn. Code. Ann. § 28-1-106. The statute of limitations is tolled, however, only if the mental incapacity exists "at the time the cause of action accrued." Tenn. Code Ann. § 28-1-106. While plaintiffs allege that George Myers was in a car accident in 2005 that resulted in "severe head injuries" and that he lost his wife shortly thereafter [Doc. 17 ¶¶ 26–32], plaintiffs have not alleged that George Myers was

---

[4]Subsequent to the briefing on the motion to dismiss, the Petition to Appoint Guardian Ad Litem/Attorney Ad Litem for Plaintiff George Myers was denied [Doc. 43].

8

Case 3:11-cv-00380-PLR-HBG   Document 45   Filed 08/10/12   Page 8 of 14   PageID #: 383

incapacitated at the time the TCPA claim accrued. Also, the Court notes that George Myers filed bankruptcy on September 1, 2009, around the time his TCPA claim accrued [Doc. 17 ¶ 78], and takes judicial notice that he did so without the involvement of a guardian ad litem. Also, it appears that at no time during the bankruptcy proceedings did anyone seek the appointment of a guardian ad litem for him. *See In re George Arnold Myers*, No. 3:09-bk-34803 (Bankr. E.D. Tenn. filed Sept. 1, 2009). The Court therefore finds that it would prejudice defendant for the Court to toll the limitations period due to George Myers's alleged incapacity.[5] *See Jacobs v. Baylor School*, 957 F. Supp. 1002, 1008 (E.D. Tenn. 1996) (noting that "the primary purpose of statutes of limitation is fairness to the defendant"). Accordingly, the motion to dismiss Count II is granted and the TCPA claim is dismissed as time-barred.

### D. Count V: Damage to Personal and/or Real Property

Pursuant to Count V, plaintiffs allege that the acts or omissions of Peoples Bank damaged plaintiffs' personal and real property [Doc. 17 ¶¶ 102–105]. Defendant asserts the amended complaint fails to state a claim for damage to personal and/or real property because the claim "is nothing more than a prayer for damages" and Tennessee law does not recognize an independent cause of action for damage to property [Doc. 19 at pp. 8–9].

In response, plaintiffs assert that "[t]he gravamen of Plaintiffs' claim for damage to personal and/or real property is not the wrongful accumulation of the illegitimate debt, . . .

---

[5]Because the Court finds that plaintiffs' TCPA claim is time-barred, the Court declines to address defendant's alternative argument that the amended complaint fails to allege facts sufficient to support a TCPA claim.

9

but rather Defendant's wrongful acts against Plaintiffs in trying to collect on such debt through improper foreclosures" [Doc. 25 at p. 8]. Thus, plaintiffs contend "they have articulated an independent claim for damages to personal and/or real property." [*Id*.]

The Court has reviewed plaintiffs' response as well as the amended complaint, however, and disagrees. The response does not explain what plaintiffs attempt to claim pursuant to Count V and plaintiffs have presented no legal authority to support a freestanding claim under Tennessee law for damage to personal or real property. Therefore, the motion to dismiss Count V is granted.

### E. Count VI: Fraudulent Concealment

Pursuant to Count VI, plaintiffs allege that defendant failed to explain documentation to plaintiffs, refused to provide plaintiffs with copies of documents they had signed, and failed to notarize documents in plaintiffs' presence [Doc. 17 ¶ 107]. Defendant argues that plaintiffs fail to state a claim because there can be fraudulent concealment only where there is a duty to disclose, which arises in the context of a fiduciary relationship, and here, there was no fiduciary or other trust relationship between plaintiffs and defendant [Doc. 19 at pp. 9–11].

Plaintiffs respond that George Myers's diminished mental state, defendant's knowledge thereof, and plaintiffs' questions about the bad-check loan renewal put defendant into a position where it owed a fiduciary duty to plaintiffs. [Doc. 25 at pp. 9–10.] In reply, defendant asserts that plaintiffs have conceded that no fiduciary relationship existed between

10

Peoples Bank and plaintiff Steve Myers, and thus, Mr. Steve Myers can have no fraudulent concealment claim. [Doc. 27 at p. 4.]

After reviewing the case law and taking the facts in the light most favorable to the plaintiff, the Court finds that the law on fraudulent concealment is somewhat unsettled. As defendants argue, "the tort of fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 571 (6th Cir. 2003) (quoting *Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538-39 (Tenn. 1998)). However, there is some support in the case law for claims of fraudulent concealment in the absence of a duty to disclose or fiduciary relationship. *See Bearden v. Honeywell Int'l, Inc.*, 720 F. Supp.2d 932, 939-41 (M.D. Tenn. 2010) (declining to dismiss a fraudulent concealment claim simply because the parties were not in a fiduciary relationship); *PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 2012 WL 1572130 at *19 (Tenn. Ct. App. May 4, 2012) ("Fraudulent concealment may also be shown without the existence of a duty where the concealment constitutes a trick or contrivance"). In the absence of further briefing and development of the record through discovery, the motion to dismiss is denied with respect to Count VI.

F.  **Count VII: Economic Duress**

Pursuant to Count VII, plaintiffs allege that they were under economic distress as a result of the $940,000 worth of bad checks and "coerced into signing a blanket security agreement" on or about July 29, 2009 [Doc. 17 ¶¶ 55, 113–14]. Defendant argues that Count

11

VII fails to state a claim, however, because plaintiffs allege throughout the amended complaint that they had no knowledge of the security agreement when they signed it, and did not become aware of Peoples Bank's security interest until the time they began receiving foreclosure notices [Doc. 19 at pp. 11–12]. Defendant claims plaintiffs "cannot have it both ways" as they were either "coerced into signing the security agreement, in which case they knowingly signed it under duress, or they had no knowledge of the security agreement, in which case they by definition were not coerced into signing it" [*Id.*].

Plaintiffs contend that the amended complaint sets forth a viable claim for economic distress because Bob Bryant coerced them into signing the blanket security agreement on July 29, 2009, as he made them choose between "renew[ing] the note by signing certain documents, which [they] did not have time to review, or be held to account for the principal balance of the bad-check loan" [Doc. 25 at p. 11]. In response to defendant's assertion that plaintiffs "cannot have it both ways," plaintiffs assert that they can maintain both their fraudulent concealment and economic duress claims pursuant to Rule 8(a)(3) of the Federal Rules of Civil Procedure. [*Id.*]

Duress is an "unlawful restraint, intimidation, or compulsion of another to such an extent and degree as to induce such other person to do or perform some act . . . contrary to his will and inclination." *Federal Deposit Ins. Corp. v. Ramsey*, 612 F. Supp. 326, 328 (E.D. Tenn. 1985). The alleged coercive event "must be of such severity, either threatened, impending or actually inflicted, so as to overcome the mind and will of a person of ordinary firmness." *Id.* "Economic duress" has been defined by Tennessee courts as "imposition,

12

oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness of another." *Crocker v. Schneider*, 683 S.W.2d 335, 338 (Tenn. Ct. App. 1984).

Taking the facts asserted by the plaintiffs as true, the Court finds that plaintiffs have not plausibly stated a claim for economic duress. Assuming that defendant did advise plaintiffs to sign the security agreement or be held responsible for the entire loan amount, the defendant was simply asserting the right to pursue a remedy to which it was entitled. *See Flynt Eng'g Co. v. Cox*, 99 S.W.3d 99, 101-102 (Tenn. Ct. App. 2002) ("the assertion of an intention to pursue a legal remedy is not ordinarily economic duress ... and to do what one has a legal right to do is insufficient to create duress") (citation omitted); *Cummings, Inc. v. Dorgan*, 320 S.W.3d 316, 332 (Tenn. Ct. App. 2009) (same). The economic risk associated with a common business transaction does not rise to the level of duress. *See Moman v. Walden*, 719 S.W.2d 531, 534 (Tenn. Ct. App. 1986) ("The pressure of financial circumstances is insufficient to establish economic duress"); *Gascho v. Scheurer Hosp.*, 2010 WL 4810222 at * 5 (6th Cir. Nov. 17, 2010) (the economic benefits versus risk of economic hardship of an unaccepted offer does not state a claim "because this kind of threat is an accepted part of the bargaining process" (quoting Restatement (Second) of Contracts § 176 cmt. a)). Accordingly, the motion to dismiss Count VII is granted.

**G.     Attorney Fees**

Citing the American Rule, the defendant has moved for dismissal of the plaintiffs' request for attorney fees in connection with their fraudulent inducement claim, [Doc. 17,

13

Prayer ¶ E], on the basis that they have alleged no contractual or statutory basis supporting their request for attorney fees. [Doc. 19 at p. 12.] In response, plaintiffs note that their TCPA claim (and the previously asserted TILA claim) has a statutory provision for the recovery of attorney fees. [Doc. 25 at pp. 12-13.] In reply, the defendant correctly notes that the plaintiffs have identified no contractual or statutory basis for an award of attorney fees with their fraudulent inducement claim. [Doc. 27 at p. 5.]

While plaintiffs may be unable to recover attorney fees for their fraudulent inducement claim (Count IV), that claim has not been addressed by defendant's motion. Inasmuch as the fraudulent inducement claim will proceed, the Court declines to predetermine what remedies, if any, the plaintiffs may recover before the claim is addressed on the merits. The defendant's motion to dismiss the prayer for attorney fees is denied.

### III. Conclusion

For the reasons set forth herein, the defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART** as follows: the motion is **GRANTED** as to Counts II, V, and VII and those claims are **DISMISSED with prejudice**; the motion is **DENIED** as to Counts I, VI, and the prayer for relief.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE
