UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RONALD STEVEN MYERS and GEORGE MYERS, Plaintiffs, vs. THE PEOPLES BANK OF EWING, Defendant. | No. 3:11-cv-380 (Campbell/Guyton) |

### ORDER

In this diversity lawsuit, Defendant The Peoples Bank of Ewing (Peoples Bank) has moved for summary judgment on all claims brought against it by Plaintiffs Ronald Steven Myers and George Myers. For the reasons set forth below, the court **GRANTS IN PART** and **DENIES IN PART** Peoples Bank's motions.[1]

### ANALYSIS[2]

The Myers allege breach of contract, fraud in the inducement, and fraudulent

---

[1]The Honorable Thomas A. Varlan thoroughly described the factual background of this lawsuit in his Memorandum Opinion and Order (Dkt. No. 45). This court will not repeat the factual background unless necessary to explain this order.

[2]Peoples Bank filed separate, but nearly identical, motions against the two Plaintiffs. Because it raises many of the same arguments in support of its motions against both George and Ronald Myers, the court will discuss the motions together unless otherwise noted.

concealment.[3] Peoples Bank seeks summary judgment on those claims, contending, among other things, that the claims are barred by the statute of limitations, res judicata, collateral estoppel, and judicial estoppel.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the factual evidence and draw reasonable inferences in favor of the non-moving party." National Enters., Inc. v. Smith, 114 F.3d 561, 563 (6th Cir. 1997) (citing Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The court then decides "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

**A**. **Breach of Contract**

The Myers allege that Peoples Bank violated three contracts arising out of three legal transactions: a joint demand deposit account held by the Myers at Peoples Bank (the '598 account); a February 1, 2006 loan agreement (the '356 loan), and a second loan agreement dated July 28, 2008 (the '211 loan).

---

[3]The Myers originally alleged seven claims against Peoples Bank. Only three of those claims remain, because the Myers voluntarily dismissed one claim in July 2012 (see Dkt. No. 44) and Judge Varlan dismissed three claims in his August 10, 2012 Memorandum Opinion and Order (Dkt. No. 45).

2

1. <u>The '598 account</u>

The Myers opened the '598 account on October 26, 2005. On May 30, 2006, after the account was significantly overdrawn, Peoples Bank closed the account. The Myers allege that Peoples Bank breached its contract with them by failing to give them notice of "insufficient funds" checks deposited in the '598 account.

Peoples Bank argues that this breach of contract claim is barred by the three-year statute of limitations found in Tennessee Code Annotated § 47-4-111. The Myers filed their initial complaint on August 15, 2011, more than five years after the account was closed. Before the account was closed, Peoples Bank sent the Myers monthly statements and notices of charge-backs to the address that was listed on the account, so Peoples Bank contends that the Myers were given timely notice not only of dishonored checks deposited into the account but also that the account had been closed.

In support of its argument, Peoples Bank submitted the declaration of Juliette Stamper, a Peoples Bank vice president, who reviewed the records of the '598 account. According to Ms. Stamper, a first charge-back notice was mailed to the Myers on December 23, 2005, a second on January 9, 2006, and a third on January 10, 2006. (Decl. of Juliette Stamper (Dkt. No. 72) ¶ 4.) As of January 31, 2006, the '598 account was overdrawn in the amount of $652,587.63, and the account statement of February 23, 2006, reflected this amount. (<u>Id.</u> ¶ 5.)

The Myers contend that the statute of limitations was not triggered because they did not receive the statements and notices from the bank regarding the '598 account. But they offer little to no admissible evidence to dispute the specific facts set forth in Ms. Stamper's declaration. Ronald Myers states in his sworn declaration that the dishonored checks were never mailed to his

3

father. (Decl. of Ronald Steven Myers (Dkt. No. 121) ¶ 7.) But his statement lacks foundation because he cannot have personal knowledge of what his father knows. Accordingly, the information set forth in Paragraph 7 of Ronald Myers' Declaration is inadmissible. Also, in the same declaration, he claims that "[n]either my father nor I became aware of the bad checks until . . . April 4, 2006." (Id. ¶ 9.) Again, Ronald Myers cannot testify about his father's knowledge. And his statement that he was not "aware of the bad checks" is conclusory and does not rebut the evidence that Peoples Bank sent the notices to the address provided by the Myers. "A mere scintilla of evidence is insufficient" to defeat a summary judgment motion. McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 799 (6th Cir. 2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).)

In the alternative, the Myers argue that a six-year statute of limitations applies. Although they do not dispute that, as a general matter, section 47-4-111 establishes the limitation period under Tennessee's version of the Uniform Commercial Code (UCC) for suits brought to enforce obligations or rights arising out of banking transactions, the Myers contend that the six-year statute of limitations in Tennessee Code Annotated § 28-3-109(a)(3) applies. (See Pls.' Mem. Opp'n (Dkt. No. 122) at 4.) Section 28-3-109(a)(3) sets a six-year limitation period for "[a]ctions on contracts not otherwise expressly provided for." Id. The Myers cite no case law to support their argument, and they make only a conclusory argument that because of "fundamental variances from the provisions of the Tennessee UCC, the broader six-year statute of limitations must apply." (Pls.' Mem. Opp'n (Dkt. No. 122) at 5.)

George Myers offers a third argument, contending that the statute of limitations was tolled for him. He claims that as the result of a car accident in November 2004, he was mentally

4

incapacitated and so the statute of limitations should be equitably tolled.

If a person is of "unsound mind," § 28-1-106 of the Tennessee Code tolls the applicable statute of limitations until at least three years after the disability has been removed. Id. The disability must exist at the time the cause of action accrued. Smith v. Grumman-Olsen Corp., 913 F. Supp. 1077, 1083 (E.D. Tenn. 1995). The burden of proving a disability that tolls a statute of limitations falls upon the one claiming the disability. Id. at 1084.

The statute does not define "unsound mind,"[4] but in Jacobs v. Baylor School, 957 F. Supp. 1002 (E.D. Tenn. 1996), the court construed the term as "incapable of attending to any business, or of taking care of [oneself]." Id. at 1010 (quoting Porter v. Porter, 22 Tenn. (3 Hum.) 586, 589 (1842)). The evidence submitted by George Myers does not show that he was either incapable of attending to business or of taking care of himself during the relevant time.

George Myers relies on the following evidence as proof that he was of unsound mind: a February 18, 2012 affidavit of Ronald Steven Myers (Dkt. No. 22); 2005 and 2009 medical records from the University of Tennessee Medical Center (Dkt. No. 23); a letter dated April 26, 2012, from George Myers' physician, Dr. Brent Neal (Dkt. No. 37); and a second letter from Dr. Neal, dated June 6, 2012 (Dkt. No. 40). (Pls. Mem. Opp'n (Dkt. No. 122) at 8.)[5]

---

[4]A revised version of section 28-1-106 went into effect on July 1, 2011 (after the events at issue occurred but before the Plaintiffs filed their complaint). In July 2011, the state legislature changed the language of the former statute, replacing the phrase "unsound mind" with the words "adjudicated incompetent." Regardless of which version applies in this case, and even if one standard is stricter than the other, under either version the court's analysis and conclusion remain the same.

[5]Because the medical records and the letters from Dr. Neal were not authenticated the court could refuse to consider them. But the court believes that these documents are what the Myers claim them to be and will accept them as evidence.

5

a.  Ronald Steven Myers Affidavit

Ronald Myers stated in an affidavit that his father suffered "long-term effects from [injuries sustained in a November 2004 car accident] including amnesia, dizziness, loss of balance." (Ronald Steven Myers' Feb. 17, 2012 Aff. (Dkt. No. 22-1) ¶¶ 3, 6.) He also stated that his father had a seizure and was taking medicine to prevent another. (Id. ¶ 6.) Then he made a general statement that "[o]n a daily basis, I observe George Myers not comprehending the world around him." (Id. at ¶ 7.) Ronald Myers' testimony is vague, does not contain specific dates, and does not establish that during the relevant time, or at any time, George Myers was incapable of attending to any business or caring for himself.

b.  Medical Records from the University of Tennessee Medical Center

George Myers also relies on medical records from 2005 and 2009 to support his claim of mental disability.

First, the records show that in 2005, George Myers had a seizure and was admitted to the University of Tennessee Medical Center. The medical records contained the following notation: "He [George Myers] has been active out on the farm and was having a 'good time'" before the seizure occurred. (Medical Records (Dkt. No. 23-1) at 9.) A doctor also wrote that George Myers "is slightly confused according to the brother and grandson, but he is gradually improving." (Id.)

Then, on July 7, 2009, George Myers was admitted to the Center "due to dizziness and staggering and evidence of widespread vascular disease including a laminar mural thrombus of the descending thoracic aorta." (Id. at 2.) Hospital staff noted that he was "alert and oriented[.]" (Id. at 4.) In a neurology consultation report from the examination done on July 9th, a doctor

6

reported that George Myers was "alert, oriented, and cooperative. No evidence of dementia." (Id. at 11.) The doctors determined that Mr. Myers needed cardiac bypass surgery. After the surgery, one doctor observed that George Myers "experienced some intermittent confusion through much of his postoperative course." (Id. at 5.) But, according to the same doctor, "His mental status also improved, and he was alert and oriented before discharge." (Id.)

The medical records do not support the contention that George Myers was of unsound mind. If anything, the records indicate that George Myers, although suffering at times from seizures and initial confusion, was alert, active and mentally sound.

    c.    <u>Dr. Neal's Two Letters</u>

Dr. Brent Neal wrote two letters to the Myers' attorney in 2012. (See Apr. 26, 2012 Ltr. (Dkt No. 37 at 8); June 6, 2012 Ltr. (Dkt. No. 40 at 2).) Neither letter supports George Myers' argument for tolling the statute of limitations.

The two letters are identical except in the second letter, Dr. Neal adds the conclusory statement that George Myers "is unable to manage his business, legal and financial affairs." (Neal Letter (Dkt. No. 40).) In his two letters, Dr. Neal wrote that he saw George Myers in 2009 and "felt that he had a mild to moderate cognitive impairment as well as anxiety and or depression." (Dkt. Nos. 37, 40.) Then Dr. Neal concluded, after an April 2012 examination of George Myers, that he was suffering from dementia. (Id.) Because Dr. Neal concluded in 2012, after this lawsuit was filed, that George Myers was suffering from dementia, his conclusion simply is not relevant.

None of the documentation described above suggests a mental incapacitation that would toll the statute of limitations. George Myers has not met his burden to show that he was of

unsound mind.

Absent such a showing, and because the court finds that the Myers had timely notice of problems with the '598 account, the Myers' breach of contract claim based on the '598 account is barred by the three-year statute of limitations.

    2.    The '365 and '211 Notes

The Myers' allegations of breach of contract based on the two notes are vague and difficult to decipher. Moreover, in their opposition to Peoples Bank's motion for summary judgment on the contract claims, they point to no evidence disputing Peoples Bank's argument and evidence that it did not violate any contractual agreements relating to the notes. Accordingly, the breach of contract claims on the '365 and '211 notes are dismissed.

**B.    Fraud in the Inducement and Fraudulent Concealment**

These two claims relate only to the '211 note. The Myers allege that Bob Bryant, an employee of Peoples Bank, "tricked" them into signing a loan renewal which the Myers believed was secured by only one piece of property, the Ausmus farm, when, in fact, "Peoples Bank was taking a secured interest in nearly every piece of property the Plaintiffs owned[.]" (Am. Compl. (Dkt. No. 17) ¶ 99.) The Myers go on to allege that Peoples Bank did not explain documents to them, failed to provide them with necessary documents, and "fail[ed] to notarize documents in the Plaintiffs' presence . . . ." (Id. ¶ 107.)

Peoples Bank contends, among other things, that the legal doctrines of res judicata, collateral estoppel, and judicial estoppel bar the Myers' claims.

    1.    Res Judicata/Collateral Estoppel

In New Hampshire v. Maine, 532 U.S. 742 (2001), the United States Supreme Court

8

described res judicata:

> [The] res judicata doctrines are commonly called claim [preclusion] and issue preclusion. Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.

Id. at 748-49. Courts frequently refer to issue preclusion as "collateral estoppel." See, e.g., Malin v. JPMorgan, 860 F. Supp. 2d 574, 580-81 (E.D. Tenn. 2012).

Peoples Bank points to orders issued by a bankruptcy court handling the Myers' bankruptcy proceedings. According to Peoples Bank, the bankruptcy court's orders lifting the automatic stay to allow foreclosure of several of the Myers' properties, which were collateral for the '211 note, preclude litigation of issues relating to those properties and the validity of the '211 note.

Peoples Bank has not cited to any case law to support its position that the bankruptcy court orders lifting the automatic stays under 11 U.S.C. § 1162 in the Myers' bankruptcy cases preclude the claims and issues relating to the '211 note. And several cases appear to be directly contrary to Peoples Bank's contention.

In a decision from this district, Malin v. JPMorgan, 860 F. Supp. 2d 574 (E.D. Tenn. 2012), plaintiffs borrowed money from Washington Mutual Bank (WAMU) to purchase real property. The FDIC closed WAMU and sold the assets to several other financial institutions, including JP Morgan Chase (Chase). After the plaintiffs filed Chapter 7 petitions in the bankruptcy court, Chase obtained relief from the automatic stay. Following the lifting of the

9

automatic stay, the plaintiffs were discharged from their bankruptcy proceedings.

The Malin plaintiffs then brought suit against Chase alleging, among other claims, that Chase did not have the right to foreclose on the plaintiffs' real property. Chase moved to dismiss those claims on the ground that the bankruptcy court's orders lifting the automatic stays precluded plaintiffs from relitigating the issue of Chase's right to foreclose on the property.

The Malin court carefully analyzed two cases which had determined that orders lifting automatic stays did not have preclusive effect on issues raised in later lawsuits. Id. at 581-83 (discussing Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26 (1st Cir. 1994), and In re Lebbos, 455 B.R. 607 (Bankr. E.D. Mich. 2011)). The court then held:

> In sum, the Court agrees with the reasoning of Grella and Lebbos that "any determination under § 362(d) is narrowly limited to whether a creditor has a colorable claim against property of the estate . . . [and a]ny decision would be made solely on the statutory grounds expressed in § 362(d)." Lebbos, 455 B.R. at 615; see also Grella, 42 F.3d at 32. Similarly, because the Bankruptcy Court's orders were pursuant to § 362 only, the Court does not find that collateral estoppel, which requires that the precluded issue be raised and necessary to the prior judgment, operates to bar plaintiffs' claims. Accordingly, the Court concludes that neither res judicata nor collateral estoppel operate to bar plaintiffs' first and fifth causes of action and the motion to dismiss will be **DENIED** in regard to the claims.

Malin, 860 F. Supp. 2d at 584.

This court finds the decisions in Malin, Grella and Lebbos persuasive and finds that the Myers' claims are not barred by res judicata or collateral estoppel.

2.  Judicial Estoppel

Peoples Bank contends that because George Myers identified Peoples Bank as a secured creditor with undisputed claims against him in the amount of $865,000 on Schedule D of his bankruptcy petition (which he signed under penalty of perjury), he is judicially estopped from

10

disputing those claims now. (Ronald Myers listed Peoples Bank's claim as "disputed" on his bankruptcy schedule.)

"The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" Browning v. Levy, 283 F.3d 761, 775 (6th Cir. 2002) (internal citation omitted).

In Browning, the defendant argued that because a predecessor of one of the plaintiffs had failed to disclose its claims against the defendant in a disclosure statement filed in its bankruptcy proceeding, judicial estoppel prevented the plaintiff from asserting a contrary position in the Browning action. Although the Browning court acknowledged that a debtor has an affirmative duty to disclose all of its assets in a bankruptcy proceeding, the appellate court reversed the lower court's decision that judicial estoppel barred the plaintiff's claims. The Browning court pointed out that the defendant "presented no proof to show that NW [the plaintiff] intended to convince the bankruptcy court that it had no claims against SSD [the defendant]. NW's [the plaintiff's predecessor's] omission is as consistent with inadvertence as it is with an affirmative assertion." Id.

Similarly, in this case, Peoples Bank has not presented any evidence that George Myers' failure to write "disputed" when he identified Peoples Bank's claim on his bankruptcy schedule was intended to mislead the bankruptcy court. Accordingly, based on the record before it, the court concludes that the doctrine of judicial estoppel does not bar George Myers' claims.

    3.        <u>Remaining Issues</u>

Despite having carefully reviewed the parties' arguments on the other issues raised by

Peoples Bank in support of its motion for summary judgment on the Myers' claims of fraudulent inducement and fraudulent concealment, the court is unable to reach a conclusion based on what has been submitted. And the court will not attempt to construct the parties' arguments for them. Accordingly, the court denies without prejudice Peoples Bank's motion for summary judgment on the Myers' claims of fraudulent inducement and fraudulent concealment, except the court denies with prejudice Peoples Bank's motion for summary judgment based on res judicata, collateral estoppel and judicial estoppel.

## ORDER

For the foregoing reasons, Defendant The Peoples Bank of Ewing's Motions for Summary Judgment (Dkt. Nos. 66 and 67) are GRANTED IN PART and DENIED IN PART. Specifically, the portion of the motion challenging the Plaintiffs' breach of contract claims is GRANTED because the claims are barred by the statute of limitations. But Peoples Bank's motion for summary judgment on Plaintiffs' claims of fraudulent inducement and fraudulent concealment is DENIED.

Plaintiff Ronald Steven Myers' Motion for Extension of Time to File Response (Dkt. No. 96) is DENIED AS MOOT.

SO ORDERED this 19th day of September, 2013.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge